IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JUDITH S.,[1]

            Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

No. 3:24-cv-00219-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Judith S. seeks judicial review of the Social Security Commissioner's final decision denying his application for disability insurance benefits ("DIB") Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

      Plaintiff filed an application for disability insurance benefits on May 27, 2021, alleging a disability onset date of September 30, 2019. Tr. 213. The Commissioner denied plaintiff's claim on September 15, 2021, and again upon reconsideration on February 7, 2022. Tr. 230, 240. Plaintiff filed a written request for a hearing, and three hearings, two of which were

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

supplemental, were held before Administrative Law Judge Richard Geib on June 16, 2022, August 23, 2022, and February 6, 2023. Tr. 131–68, 169–99, 200–11. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 106–17. The Appeals Council denied plaintiff's request for review on December 11, 2023. Tr. 1–7. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 108. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: autonomic dysautonomia/vasovagal syndrome/syncopal episodes (possible postural orthostatic tachycardia syndrome), lumbar spine condition, and cervical spine condition. Tr. 109. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 110. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform sedentary work . . . except can occasionally climb ramps and stairs and never climb ladders ropes or scaffolds and can occasionally balance, stoop, kneel, crouch and crawl and can have no exposure to work hazards, such as dangerous moving machinery or unprotected heights, and no extremes of temperatures.

Tr. 111.

At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as an animal hospital clerk, receptionist, appointment clerk, order clerk, and insurance clerk. Tr. 116. The ALJ therefore found that plaintiff was not disabled. Tr. 117.

## DISCUSSION

3 – OPINION AND ORDER

Plaintiff argues that the ALJ (1) erred in discounting her subjective symptom testimony, (2) failed to properly address the lay witness testimony, and (3) failed to include all limitations in the hypotheticals posed to the vocational expert. Pl.'s Br. 9–10, ECF 14.

I.  **Subjective Symptom Testimony**

Plaintiff argues the ALJ failed to identify specific, clear and convincing reasons supported by substantial evidence to reject her subjective symptom testimony. Pl. Br. 10–12, ECF 14. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's

record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At her initial hearing, plaintiff testified that she has been unable to work due to syncopal episodes, rheumatoid arthritis, and intestinal issues. Tr. 150–51, 155–57. When experiencing a syncopal episode, plaintiff explained that she suffered from fatigue, memory loss, and muscle weakness. Tr. 151. She further explained that she was having these syncopal episodes three or four times a month, that it took up to 30 minutes for her the muscle weakness to fade, and she would be too tired to "do anything" after the episodes. *Id*. She also testified that while her syncopal episodes did not result in her losing her job or having attendance issues, she did have to leave work early two or three times a month. Tr. 152. When asked about aggravating factors, plaintiff stated that stress and heat could be triggers. Tr. 154. She stated that reclining with her feet propped up, as well as compression socks, helped with her recovery following an episode. Tr. 153–54. When asked if physical activity was a factor, plaintiff stated that she cannot do physical activities that make her "too warm," because "it'll set off an episode," so she can only do up to ten minutes of chores before needing to rest. Tr. 155.

Regarding her rheumatoid arthritis, plaintiff testified that she typically experiences flare ups in her legs, specifically her hips and knees. Tr. 155. She also occasionally experiences pain in her ankles, elbows, wrists, and shoulders. *Id*. During a flare up, plaintiff has difficulty walking. *Id*. She further testified that she has been suffering from an inflammatory bowel issue that went undiagnosed for three years, but that was recently diagnosed within the last eight

5 – OPINION AND ORDER

months. Tr. 156. In terms of symptoms, plaintiff testified that she would experience severe abdominal cramping and pain, as well as diarrhea, which leads to dehydration, which can lead to a syncopal episode causing her blood pressure to drop and her to pass out. *Id*. With treatment, she only experiences abdominal issues two or three times a month. *Id*.

When asked about her activities of daily living, plaintiff stated that she does not drive or go out into the community on her own but that she does have a valid driver's license. Tr. 158. She explained that she can take care of her personal hygiene and activities such as getting dressed, so long as she is not having a severe rheumatoid arthritis flare up. *Id*. She also stated that she does not "typically need help with that." *Id.*

Turning to treatment, the ALJ noted that her treatment included medication therapy of hydration, compression stockings, Florinef, and an aerobic exercise program. Tr. 159–60. When asked, plaintiff stated that she does not engage in any sort of aerobic exercise program on her own or at a gym, and that the only exercise she regularly gets is walking her dog with her husband every day. Tr. 160. When questioned about her improvement, which included that she had not experienced any falls for several months in 2021 and was only experiencing some level of dizziness, plaintiff stated that she had been getting better at the time, but that her condition had worsened. Tr. 161–62.

At a supplemental hearing held on February 6, 2023, plaintiff testified that her condition has worsened, resulting in her passing out and having "full syncopal episodes" two or three times a week. Tr. 196. She further testified that she experiences these episodes even when sitting down "doing a crossword puzzle or watching a television show." Tr. 197. She also stated that she has altered her physical activity, such that she has to be careful bending over, she does not climb

stairs or walk up inclines, that she has to be careful, and that she does not engage in any form of cardiovascular activities, including no longer walking her dog. Tr. 197–98.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 112. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*.

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ found that plaintiff's testimony was inconsistent with the objective medical evidence, namely that her allegations regarding her syncopal episodes were unsupported by the plaintiff's medical records. *See* Tr. 112.

7 – OPINION AND ORDER

Plaintiff argues that the ALJ erred by failing to "identify any specific aspects of the record which were in any way inconsistent with Plaintiff's specific testimony that . . . she continues to have syncopal episodes." Pl.'s Br. 12, ECF 14. Plaintiff, however, is incorrect.

Plaintiff's medical records and testimony contain her own reports regarding how many syncopal episodes she was having. In September 2019, she reported she had fallen three times due to syncopal episodes, after which she was discharged because her test results were normal, and all symptoms had resolved. Tr. 916–17, 931, 1139. She had another event in October, wherein she was witnessed having a syncopal episode by a nurse, yet the doctor noted she may have been having a pseudo-syncope or pseudo seizure and that dehydration was possibly a factor. Tr. 956. In January 2020, she presented to an emergency room due to chest pain. Tr. 961. She received numerous tests, including a stress test, EKG, CT, and chest x-ray, all of which came back negative. *Id*. In February, plaintiff stated that she was collapsing due to syncope seven or eight times a week. Tr. 1516. In March, she had a tachycardic event which she tolerated without syncope, and her test results were once again unremarkable. Tr. 1064. Despite her complaints of collapsing seven or eight times per day, she was not seen again for her syncopal episodes until January 2021, where she was prescribed increased fluid intake, salt tablets, and compression socks. Tr. 1703. In May, following a syncopal event had while in the restroom, she was also prescribed Florinef in combination with increased fluid intake, salt tablets, and compression socks. Tr. 1712. In September, plaintiff reported that Florinef, hydration, and compression socks were helping with her syncopal episodes, that she had not had any falls since June, only some dizziness, and that she was walking up to 20 minutes a day for exercise. Tr. 1877–78. At this same appointment, her orthotactics were unremarkable, she was encouraged to continue her aerobic exercises and was told to return in six months if her condition worsened. *Id*.

8 – OPINION AND ORDER

Plaintiff was not seen again until August 2022, where she reported having syncopal episodes twice a week. Tr. 2603. In December, she reported that her syncopal episodes had improved. Tr. 2753.

Plaintiff testified that she can only do chores for up to 10 minutes at a time because she cannot do any activity that will make her "too warm," because it can lead to a syncopal episode, and that she does not engage in any sort of exercise program. Tr. 155. Yet, her records indicate that she was getting in daily walks of up to 20 minutes at a time, that she was capable of riding an exercise bike for 30 minutes at a time, and that she could shop for groceries for up to 45 minutes. Tr. 446, 1877, 2575. Notably, while she has a recorded increase in heart rate when moving from lying down to standing, when given a treadmill stress test, the test was negative. Tr. 961. Also of note, despite reporting falling seven or eight times per day, then having those fainting episodes reduced to approximately three times a week, a medical expert testified that plaintiff's "fainting episodes or near fainting episodes have not caused loss of consciousness where she sustained an injury but is able to change her position." Tr. 180.

Given the evidence, notably plaintiff's gaps in treatment despite a serious condition and contradictory statements between those given at her hearing and those given to treatment providers, the ALJ did not err in discounting plaintiff's testimony for inconsistency.

B.   **Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Furthermore, "evidence of 'conservative treatment' is sufficient to discount a claimant's

testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Smartt*, 53 F.4th 500.

Here, the ALJ relied on reports of plaintiff's syncopal episodes improving over time and being well managed with treatment. Tr. 112–13, 115. Plaintiff argues that despite a good response to treatment, she still experiences syncopal episodes two to three times per week along with five to ten additional episodes of lightheadedness. Pl.'s Br. 10, ECF 9. Plaintiff's argument, however, is unsupported.

Plaintiff testified that she experiences syncopal episodes up to three times per week, that she is no longer able to do even small physical activities such as walking her dog, that she can only do household chores for up to ten minutes at a time, and that her episodes are exacerbated by stress and heat. Tr. 151, 153–55, 196–98. Despite these complaints, plaintiff consistently reported doing well on conservative treatment. For example, in January 2021, plaintiff was prescribed increased fluid intake, compression socks, salt tablets, and Florinef. Tr. 1703. Following treatment, she went from reporting that she was collapsing seven or eight times per day in February 2020 to reporting that her treatment was helping in September 2021. Tr. 1516, 1738. Plaintiff also reported that she had experienced no falls since June 2021, that she was walking 15–20 minutes a day for exercise, and that she was experiencing some bouts of dizziness. Tr, 1877–78. It was also noted that her diarrhea contributed to her dehydration which contributed to her vasovagal symptoms, she was encouraged to continue her aerobic exercise program, and she should return if her symptoms worsen before her scheduled six-month checkup. Tr. 1877. Plaintiff was not seen again for her syncopal episodes until August 2022 where she reported having syncopal episodes at least twice a week. Tr. 2603. In December, she

reported that her syncopal symptoms were improving, though she was experiencing some lightheadedness. Tr. 2753.

Given the above records, the ALJ reasonably concluded that plaintiff's treatment was both conservative and effective in treating her syncopal episodes, considering her syncopal episodes decreased dramatically from seven or eight per day to twice a week, and continued further improvement. Plaintiff presented little evidence to support her contention that her improvements were inadequate, and essentially asks this Court for a different reading of the record, but "the Court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti*, 533 F.3d at 1038. Therefore, the ALJ's finding that plaintiff improved with treatment is supported by substantial evidence.

### C. Daily Activities

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 115. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has found that activities such as using public transportation, shopping, preparing meals, performing household chores, performing personal care, socializing with friends, and watching television and playing video games for sustained periods may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

11 – OPINION AND ORDER

The ALJ reasonably concluded that some of plaintiff's daily activities conflicted with her testimony about her syncopal episodes. Plaintiff testified that she does not engage in much physical activity because if she gets "too warm," she can trigger a syncopal episode. She further testified that she can only do chores for up to 10 minutes at a time, that she does not engage in any exercise, and that she would sometimes walk the dog but eventually she stopped doing that as well. Tr. 155, 160, 198. The ALJ contrasted plaintiff's testimony about her impairments with evidence provided in plaintiff's records, noting that despite not being able to engage in physical activity for more than 10 minutes due to possibly triggering a syncopal episode, plaintiff reportedly walked for up to 20 minutes daily for exercise, that she uses an exercise bike for up to 30 minutes at a time, and that she grocery shops for up to 45 minutes at time. Tr. 446, 1877, 2575. Accordingly, this was a clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony about the severity of her physical condition.

## II.    Lay Witness Testimony

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").[2]

---

[2] Citing in the revised regulations for medical source opinions, the Commissioner argues that the

In the third-party report provided by plaintiff's spouse, he reported that on bad days plaintiff cannot do household chores such as cleaning and laundry, needs help walking, getting dressed, bathing, and using the bathroom. Tr. 437. He further reported that she goes outside up to five times a week, does not go out alone because she may pass out, that they grocery shop together twice a week and that she needs her wheelchair, that she cannot do anything active for fear of passing out, and that she passes out throughout the day. Tr. 439–41. The ALJ found the spouse's testimony inconsistent with the overall treatment record. For example, the ALJ noted that his reports of plaintiff passing out a few times a week, or six or seven times a month, to be inconsistent with treatment records showing hydration, compression stockings, and medication improved her symptoms. Tr. 116 (citing Tr. 443, 503, 1878, 2753). Also of note are her inconsistent and contradictory statements earlier in this opinion regarding her activity levels and that stress was an exacerbating factor despite a negative stress test. *See* Tr. 446, 961, 1877–78, 2575. Therefore, the ALJ provided a reason germane to the witness and did not err in discounting the lay witness testimony.

## IV.     Step Five

Finally, plaintiff asserts that the ALJ erred by failing to include limitations from plaintiff's testimony and the lay witness testimony in the proposed hypotheticals to the vocational expert (VE). According to plaintiff, by not including these improperly rejected limitations, the VE's testimony is of no evidentiary value. Pl.'s Br. 14–15, ECF 14.

---

ALJ is "not required to articulate" how lay witness testimony is considered. Def. Br. 13, ECF 18. While ALJ's are not required to articulate evidence from nonmedical sources using the same requirements listed for medical sources, this Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons." *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

13 – OPINION AND ORDER

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1).

The ALJ relies on the testimony of a VE to identify specific occupations that a claimant can perform in light of his RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). When there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ is required to reconcile that inconsistency by posing questions about the potential conflict. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Nevertheless, if the ALJ fails to ask the vocational expert about the potential conflict, that "procedural error" may be "harmless" if there is no conflict between the vocational expert's testimony and the DOT. *Id*. at 1154 n.19.

Plaintiff argues that limitations noted in her testimony and the lay witness testimony should have been present in the hypotheticals proposed to the VE, and by not presenting those limitations in the proposed hypotheticals, the ALJ has erred. Pl.'s Br. 14–15, ECF 14. Plaintiff's argument, however, is unavailing.

As discussed above, the ALJ provided valid reasons for discounting plaintiff's subjective symptom testimony and the lay witness testimony. The ALJ is not required to account for symptoms and limitations in the hypothetical proposed to the VE that have been properly discounted.

14 – OPINION AND ORDER

**CONCLUSION**

For the reasons given above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED April 10, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

15 – OPINION AND ORDER